# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7810**
**MDD_CDAChambers@mdd.uscourts.gov**

August 22, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:     *Audrey L. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
         Civil No. 23-2502-CDA

Dear Counsel:

On September 14, 2023, Plaintiff Audrey L. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11 and 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 28, 2011, alleging a disability onset of March 11, 2008. Tr. 15, 190-92, 208. Plaintiff's claims were denied initially and on reconsideration. Tr. 96-98, 106-108. On April 29, 2014, an Administrative Law Judge ("ALJ") held a hearing and on May 12, 2014, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12-59. The Appeals Council denied Plaintiff's request for review. Tr. 1-5. Because the ALJ's decision constituted the final decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a), Plaintiff appealed to this Court. Tr. 996-1003. This Court reversed and remanded the ALJ's decision on August 23, 2016, and the Appeals Council issued its remand order on October 18, 2017. Tr. 1004-07, 1010-12. A second hearing was held in this case on May 8, 2018, and the ALJ found that Plaintiff was not disabled on July 31, 2018. Tr. 932-68, 1015-36. On October 28, 2019, the Appeals Council for a second time remanded Plaintiff's claims for further proceedings. Tr. 1047-51. An ALJ held a third hearing regarding Plaintiff's case on July

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on September 14, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 2

7, 2020.  Tr. 969-95.  The ALJ found that Plaintiff was not disabled on June 14, 2021.  Tr. 880-905.  The Plaintiff presented her case to the Appeals Council for a third time, and the Appeals Council found no reason under their rules to assume jurisdiction.  Tr. 872-79.

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of March 11, 2008 through her date last insured of December 31, 2013[.]"  Tr. 885.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "lumbar degenerative disc disease and status post fusion at L4-S1, failed back syndrome/post laminectomy syndrome, obesity, affective disorder, somatoform disorder, anxiety disorder, and personality disorder[.]"  Tr. 885-86.  The ALJ also determined that Plaintiff suffered from the non-severe impairment of osteopenia.  Tr. 886.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 886.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to extreme cold, extreme heat, and wetness or humidity. She can have occasional exposure to hazards such as moving machinery and unprotected heights. She can perform simple, routine, and repetitive tasks[.[3]]

Tr. 888.  The ALJ determined that Plaintiff was unable to perform past relevant work as an

---

[3] The ALJ included a footnote within the RFC, in which they stated: "I am aware that the limitation to simple, routine, and repetitive tasks does not, in and of itself, address the ability to stay on task. However, treatment notes and claimant's daily activities support a finding that the claimant was able to stay focused and on task prior to the date last insured."  Tr. 888.

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 3

Administrative Assistant (DOT[4] #219.362-010) and a Mortgage Closer (DOT #219.362-030) but could perform other jobs that existed in significant numbers in the national economy.  Tr. 893. Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 895.

## III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by failing to (1) properly account for Plaintiff's limitations in concentration, persistence, or pace ("CPP"); (2) perform a function-by-function assessment of Plaintiffs work-related abilities; (3) explain how they determined that Plaintiff could be on task for 85% or more of the workday with a moderate CPP limitation; and (4) explain how they factored Plaintiff's treating psychiatrist's Global Assessment of Functioning ("GAF") rating into his RFC assessment.  ECF 11, at 4-16.  Additionally, Plaintiff argues that the ALJ erroneously evaluated Plaintiffs subjective complaints.  ECF 11, at 16. Defendant counters that the ALJ properly (1) accounted for Plaintiff's moderate limitations in CPP when formulating the RFC; (2) excluded an off-task limitation from the RFC; (3) considered the GAF score; (4) provided the necessary function-by-function assessment to support the RFC finding; and (5) considered Plaintiff's subjective complaints.  ECF 21, at 6-21.

A claimant's RFC represents "the most [they] can still do despite [their] limitations."  20 C.F.R. § 416.945(a).  RFC is expressed in terms of a claimant's ability to do "sustained work-related physical and mental activities in a work setting" for "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  When assessing

---

[4] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 4

RFC, an ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Id.*

### a.   The ALJ properly accounted for Plaintiff's moderate CPP limitations.

The Court finds that the ALJ properly accounted for Plaintiff's moderate CPP limitations. When a claimant possesses a mental impairment, an ALJ must make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)).   One of these four areas, CPP, concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3).  A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair."  *Id.* § 12.00(F)(2)(c).

After identifying a limitation in the functional area of CPP, an ALJ must expressly account for such limitation, or explain why no such limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F. 3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020).  An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations.  *See Mascio*, 780 F.3d at 638 (citation omitted) (joining the Third, Seventh, Eighth, and Eleventh Circuits in holding "that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work"); *Shinaberry*, 952 F.3d at 121-22.  However, when a medical opinion provides "detailed findings" regarding a claimant's "sustained concentration and persistence limitations," an ALJ may account for those limitations by assigning persuasive weight to the opinion and incorporating the opined limitations into the RFC.  *See Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017).

Here, after finding that Plaintiff had a moderate limitation in CPP, the ALJ determined Plaintiff's RFC.  Regarding Plaintiff's mental impairments, the ALJ "limited [Plaintiff] to simple, routine, and repetitive tasks."  Tr. 888.  The ALJ explained that while Plaintiff had limitations, the totality of the evidence failed to substantiate that her limitations were of the degree and intensity alleged and that they were of the nature to preclude her from performing basic work activities prior to the date last insured.  Tr. 892.  Within the RFC, the ALJ explained the omission of a CPP limitation because the "treatment notes and claimant's daily activities support[ed] a finding that the claimant was able to stay focused and on task prior to the date last insured."

Notwithstanding the ALJ's explanation as to why no such limitation existed, *see Mascio*, 780 F.3d at 638, the Court also finds that the ALJ provided substantial evidence for meaningful review.  The ALJ's reliance on two state agency psychologists' opinions when crafting the RFC provided ample support for it.  Tr. 892.  The ALJ assigned persuasive value to Steven Wise, Psy.D., and D. Walcutt, Ph.D.  *Id.*  The ALJ assigned only partial weight to their social limitations.  For CPP limitations, however, the ALJ assigned full persuasive value.  *Id.*  Both medical providers opined that Plaintiff had moderate CPP limitations but determined that she could maintain

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 5

concentration and attention for two-hour periods during an 8-hour workday. *Id.* The state psychologists indicated that Plaintiff could "understand, retain, and carry out simple instructions. From a mental view, [Plaintiff] can consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision . . . ." Tr. 69, 85. Additionally, both providers considered Plaintiff only "partially credible" regarding her daily activities in that she "cooks, dusts, feeds animals, dishes, pays bills, waters plants, drives, shops, etc[.]" Tr. 65, 81.

Assigning persuasive value to and adopting these opinions and limitations satisfies *Mascio*'s mandate regarding moderate CPP limitations. *See Sizemore*, 878 F.3d at 80-81 (affirming an ALJ's decision where: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion). Accordingly, the Court determines that the opinions of Drs. Wise and Walcutt "provided substantial support" for the RFC assessed in this case and the ALJ's adoption of such permits meaningful review. *Id.* at 81; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

> b. *The ALJ is not required to include an off-task percentage.*

The Court finds that the ALJ did not err when they excluded the off-task percentage posed to the vocational expert ("VE"). As explained above, the ALJ acknowledged their reasoning for excluding a CPP limitation in the RFC. Tr. 888, n.1. Notwithstanding this, "an ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018). Thus, an ALJ does not err by failing to consider a vocational expert's ("VE") testimony regarding time off-task. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 3:22-CV-88, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421–22 (6th Cir. 2014)). Plaintiff's argument to the contrary is unavailing. Here, considering the ALJ's decision as a whole, the ALJ did not commit harmful error by refusing to incorporate into the RFC the VE's testimony regarding off-task percentage. Moreover, in having assigned persuasive value to Drs. Wise and Walcutt, both of which did not include an off-task limitation, the ALJ's decision is supported by substantial evidence. *See* Exs. 1A, 3A.

> c. *The ALJ did not err when assessing Plaintiff's function-by-function assessment.*

This Court finds that, although the ALJ did not assess Plaintiff's exertional capabilities on a function-by-function basis, their assessment does not warrant remand. The RFC assessment finds support in the weight that the ALJ assigned to the opinion of Dr. Bancoff, a state agency medical consultant. *See* Tr. 892. Dr. Bancoff opined that Plaintiff was limited to sedentary exertional levels and: (1) could occasionally climb ramps and stairs, balance, stoop, kneel, crouch

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 6

and crawl; and (2) could never climb ladders, ropes, or scaffolds.  Tr. 892.  Additionally, Dr. Bancoff concluded that Plaintiff had certain exertional and postural limitations due to her spinal disorder, limiting her to sedentary work.  Tr. 63-71.  Having found Dr. Bancoff's RFC assessment persuasive, *see* Tr. 892, the ALJ limited Plaintiff to sedentary work and further accounted for her capabilities by incorporating in the RFC that she could "occasionally climb ramps or stairs and never climb ladders ropes, or scaffolds[;]" "occasionally balance, stoop, kneel, crouch and crawl." Tr. 888.

True enough, the ALJ did not individually assess Plaintiff's exertional abilities.  But the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis" and has explained that remand "may be appropriate" when an ALJ "fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636.  No such issue exists here—Plaintiff identifies no unresolved evidentiary conflicts concerning exertional functions.  The ALJ permitted meaningful review by incorporating the RFC assessment of a persuasive source into the ALJ's own RFC assessment. *See Sizemore*, 878 F.3d at 80-81 (holding that an ALJ adequately supported limitations in the RFC assessment by assigning persuasive value to the opinions of doctors who addressed the limitations in detail); *Onishea*, 116 F. App'x at 2 ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis of her exertional limitations.  Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in [assessing] RFC."); *Audlica D. v. Kijakazi*, No. BAH-22-1046, 2023 WL 1769665, at *5 (D. Md. Feb. 3, 2023) (finding harmless error where the claimant failed to show how the RFC may have changed if the ALJ performed a more in-depth function-by-function analysis).  Therefore, the ALJ's failure to explicitly assess Plaintiff's exertional abilities does not warrant remand.

> ### d.  *The ALJ did not commit harmful error by assigning great weight to Plaintiff's GAF.*

The ALJ noted that they gave "great weight" to the GAF.  Plaintiff argues that the ALJ did not properly incorporate this finding into the RFC.  The Court finds this argument unavailing. "The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019).  An ALJ's RFC determination must be based "on all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3).  However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, CCB-13-2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014).  Here, the ALJ credited Dr. Money's findings—including the GAF assessment, her mental status examinations, and mental health limitations—and explained that "nothing about the notes suggest that [Plaintiff] would be mentally unable to work."  Tr. 893.  It is unclear how any of the evidence put forth by Plaintiff would alter the ALJ's RFC analysis.  To be sure, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014).

Plaintiff disagrees with how the ALJ considered, or failed to consider, the evidence related

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 7

to her GAF.  But this Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

### e.   The ALJ properly assessed Plaintiff's subjective symptoms.

Finally, the Court finds that the ALJ properly accounted for Plaintiff's subjective complaints.  When evaluating subjective complaints, ALJs use the two-step analytical process set forth at 20 C.F.R. §§ 404.1529 and 416.929 and described in SSR 16-3p.  *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)).  Step one requires an ALJ to determine if a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[5]  *Id.* (quoting *Arakas*, 983 F.3d at 95).  At step two, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (quoting *Arakas*, 983 F.3d at 95).  Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at step two.  *Id.* (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective[6] evidence corroborating them.'"  *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

While an ALJ may not dismiss subjective complaints "based *entirely* upon the belief that they were not corroborated by the record's medical evidence," the ALJ must still "ascertain the extent of the claimant's alleged functional limitations and restrictions due to their pain or symptoms that could be reasonably accepted as consistent with the medical signs, laboratory findings, and other evidence, in discovering how these symptoms impact the claimant's ability to work." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (citing *Craig*, 76 F.3d at 594).  In this respect, SSR 16-3p recognizes that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5.  Therefore, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of [their] symptoms are consistent with the medical signs and laboratory findings of record." *Id.*  To do this, an ALJ considers "all

---

[5] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)."  Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[6] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 8

of the evidence" in a claimant's record.  *Id.* at *2, *7.

Here, at step one, the ALJ found Plaintiff to suffer from "lumbar degenerative disc disease and status post fusion at L4-S1, failed back syndrome/post laminectomy syndrome, obesity, affective disorder, somatoform disorder, anxiety disorder, and personality disorder[.]"  Tr. 885-86. The ALJ determined that Plaintiff did in fact have some limitations due to these impairments. However, the ALJ continued, the totality of evidence failed to substantiate Plaintiff's limitations were of the degree and intensity alleged, and were of the nature to preclude her from performing basic work activities prior to the date last insured.  Tr. 892.

The ALJ comported with 20 C.F.R. § 404.1529 and *Arakas*, as they did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of her pain.  *Arakas*, 938 F.3d at 96.   For example, Plaintiff received "conservative treatment for her conditions. Specifically, treatment notes show that [Plaintiff] underwent pain management and received several injections, which she reported helped."  Tr. 891.  Plaintiff "reported that her pain improved with her medication regime" and reported "excellent results" during the trial period of her lumbar spinal cord stimulator.  Tr. 891; *see* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi) (noting that treatment is a factor that the ALJ can use to evaluate the severity of a claimant's symptoms).  Both state agency medical consultants determined that Plaintiff's allegations of her daily activities were inconsistent with the medical records.  Tr. 65, 81.  The ALJ found their opinions persuasive and stated that there is "evidence in the record that [Plaintiff] has engaged in significant activities of daily living despite her impairments."  Tr. 892.  For example, she reported that she "managed her personal care, occasionally cooked, did light cleaning, watched television, and read occasionally."  Tr. 892.  Plaintiff also reported occasionally "going to public places, driving short distances, and caring for pets."  Tr. 892.  These activities, the ALJ concluded, supported the finding that Plaintiff could perform a range of sedentary, unskilled work prior to her date last insured.  Tr. 892.

The ALJ considered Plaintiff's back pain and her lumbar conditions. The ALJ noted that she "was treated with pain management using short and long-acting narcotics with muscle relaxants and extensive pain management regiment."  Tr. 889.  Even with ongoing pain and treatment for the same, the ALJ observed that in May 2013, Plaintiff noted improved pain levels, function, and ability to perform activities of daily living on her medication regimen.  Tr. 890. Additionally, Plaintiff's physical examinations "generally showed that [Plaintiff] had a normal range of motion in her lumbar spine, negative straight leg raise testing, and full muscle strength in her lower extremities."  Tr. 891.  Regarding her mental impairments, the ALJ also compared Plaintiff's complaints of significant mental health symptoms to her objective evidence: she scored "30 out of 30 on a January 2012 [mini mental status exam,] mental status examinations generally showed that [Plaintiff's] thought processes were goal-directed and coherent, she had no difficulty with memory or concentration testing, she had good eye contact and normal speech, and her insight and judgment were intact[.]"  Tr. 891.

A careful reading of this analysis reveals that the ALJ weighed Plaintiff's subjective complaints against other record evidence in a manner permissible under *Arakas.  See Audlica D.*, 2023 WL 1769665, at *3 (finding the ALJ's analysis consistent with *Arakas* where it considered

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 9

claimant's qualifying statements about pain and other evidence documenting improvement in symptoms). Moreover, *Arakas* holds that "ALJs may not rely on objective medical evidence (or the lack thereof) . . . to discount a claimant's subjective complaints regarding symptoms of . . . some disease *that does not produce such evidence*." *Arakas*, 983 F.3d at 97 (emphasis added). Plaintiff does not suggest that her subjective complaints relate to a disease that fails to present objective evidence of its existence. Multiple scans and medical evidence led the ALJ to find lumbar disorders as a medically determinable impairment and, thus, informed the ALJ's decision to include multiple limitations in the RFC. Tr. 888. The ALJ based their conclusion on Plaintiff's subjective complaints of pain and her own statements, including qualifying statements regarding the extent to which she can perform activities of daily living, and on objective medical evidence in the record. *See John O. v. Kijakazi*, No. AAQ-21-1378, 2022 WL 2305255, at *5 (D. Md. June 27, 2022) (distinguishing *Arakas* and affirming the ALJ's decision where the ALJ discounted the plaintiff's subjective complaints based on objective medical evidence—rather than a lack of objective evidence); *Craig*, 76 F.3d at 595 (noting that, generally, "objective medical evidence and other objective evidence [are] crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work"). As such, I find that the ALJ properly evaluated Plaintiff's symptoms.

Plaintiff also contends that the ALJ contravened *Arakas* by assessing her daily activities "without also considering the extent to which she could perform them." ECF 11, at 23. I disagree. To be sure, "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." *Arakas*, 983 F.3d at 99 (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original)). But here, the ALJ's analysis of Plaintiff's activities did not fail to consider the extent to which Plaintiff could perform the activities. *See, e.g.*, Tr. 889 (noting that Plaintiff testified that she "can stand for five to [ten] minutes."); Tr. 892 ("She reported driving short distances, and caring for pets."); Tr. 892 ("She reported that she managed her personal care, occasionally cooked, did light cleaning, watched television, and read occasionally."). The ALJ's discussion of the extent of the activities assessed here is sufficient. *See Footman v. Kijakazi*, No. 21-1116, 2023 WL 1794156, at *2 (4th Cir. Feb. 7, 2023) (affirming despite the fact that "the ALJ may not have listed every single additional qualifying statement about the extent to which [Plaintiff] can perform daily activities" because "the ALJ did demonstrate that she adequately considered [the activities] and found them to be inconsistent with specific, objective evidence in the record"). As such, I find that the ALJ's assessment of Plaintiff's daily activities was supported by substantial evidence.

*Audrey L. v. O'Malley*
Civil No. 23-2502-CDA
August 22, 2024
Page 10

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.


Sincerely,


/s/

Charles D. Austin
United States Magistrate Judge